IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kaitlyn Nicole Riley,          :

       Plaintiff,          :

    v.                          :       Case No.  2:15-cv-2865

Commissioner of Social Security,       JUDGE MICHAEL H. WATSON
                      Magistrate Judge Kemp
       Defendant.          :

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Kaitlyn Nicole Riley, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for supplemental security income.  That application was filed on August 28, 2012, and alleged that Plaintiff became disabled while a child under the age of 18 (she turned 18 after her application was filed).

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on April 14, 2014.  In a decision dated April 25, 2014, the ALJ denied benefits.  That became the Commissioner's final decision on July 29, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on December 23, 2015.  Plaintiff filed a statement of specific errors on January 25, 2016, to which the Commissioner responded on May 18, 2016.  Plaintiff filed a reply brief on June 6, 2016, and the case is now ready to decide.

II.  The Lay Testimony at the Administrative Hearings

Plaintiff, who was 18 years old as of the date of the hearing and who graduated from high school, testified as follows. Her testimony appears at pages 37-52 of the administrative record.

Plaintiff completed high school in 2013.  She lived with her parents and two siblings.  While in school, she had an IEP which provided her with assistance in comprehending written materials. With that help, she earned Cs or above in all of her classes. She was not able to pass the proficiency tests, however.

Since graduation, she had been attempting to find work with the help of Athens County.  She did well working at a child care center but was overwhelmed by being a bagger at a Kroger store. A job at a Ponderosa, wiping tables, was harder for her than the bagging job.  At each location, she was accompanied by a job trainer who explained things to her.  She believed she could work successfully as a childcare worker.

Plaintiff testified that she was nervous around some people, but she did have a boyfriend whom she went bowling with and rode a four-wheeler.  She did not feel comfortable being home alone after dark.

As far as chores were concerned, Plaintiff did cleaning and dusting.  She also watched television and helped her mother with babysitting.  Occasionally she became irritable being around people.

Plaintiff's mother also testified at the administrative hearing.  She first said that Plaintiff had not been socially active prior to her relationship with her boyfriend.  Plaintiff had separation anxiety and did not like being away from her mother.  Plaintiff would sometimes vomit before leaving the house, and she would text her mother frequently when she was away.  Plaintiff was able to prepare lunch and change diapers for the children whom her mother babysat.  Plaintiff had been unable to pass the test to get a learner's permit.  She had always had difficulty comprehending both written and oral information.  (Tr. 52-57).

Finally, Plaintiff called Margaret Casey, a support

-2-

specialist with the Athens County Board of Developmental Disabilities, to testify about Plaintiff's work efforts.  Ms. Casey said that Plaintiff was deemed eligible for the Board's services due to functional limitations in the areas of self-care, self-direction, learning, and receptive and expressive language. Plaintiff was in a division of the sheltered workshop program which "takes job skills and job teaching and job training outside the four walls of the traditional sheltered workshop environment."  Ms. Casey said that Plaintiff had demonstrated an interest in childcare but that she would continue to receive services from a rehabilitation specialist even if she obtained a job in that field.  (Tr. 58-64).

    III.  <u>The Medical and Educational Records</u>

The pertinent medical and educational records can be summarized as follows.  Since the statement of errors focuses on the ALJ's credibility determinations, these records serve mainly as background.

Dr. Kramer, a psychologist, reported on August 9, 2012, that, based on a form completed by her parents, Plaintiff's adaptive living skills were generally below average to extremely low, but that a form completed by her teacher showed higher scores (Plaintiff was still below average or worse in four areas including communication, community use, functional academics, and self-direction).  The teacher's scores were given less consideration because they were slightly out of date.  Dr. Kramer diagnosed mild mental retardation (Tr. 289-90).  A prior report included a diagnosis of anxiety disorder.  (Tr. 291).  Dr. Kramer also administered intelligence testing, measured Plaintiff's full-scale IQ at 66, and commented that her "ability to process simple, routine and visual information quickly without making errors is a relative strength."  (Tr. 292).

On September 18, 2012, Patsy Perry, a special education

-3-

coordinator at Plaintiff's school, reported that Plaintiff would
complete high school with a vocational certificate in childcare.
Ms. Perry concluded that Plaintiff would be able to seek and
maintain employment. (Tr. 298). Ms. Perry also completed a form
on which she was asked to rate Plaintiff's abilities in various
areas; she indicated that Plaintiff had a "serious problem" in
the areas of reading and comprehending written material,
comprehending and doing math problems, and expressing ideas in
written form. She had an "obvious problem" in five other areas
related to acquiring and using information, including learning
and retaining new material, but she had no serious or obvious
problems in the domain of attending and completing tasks. (Tr.
190-95).

Craig C. Browne, an habilitation specialist with the Athens
County Board of Developmental Disabilities, wrote a letter on
March 11, 2014, summarizing Plaintiff's work at a childcare
center. He said that she had strong motivation and interest but
that she had support needs including assistance in understanding
and acting on new routines, understanding rules and requirements,
reading comprehension and clarification, writing, and any work
routine changes like schedules, needing repeated reminders on
that topic. (Tr. 279).

Dr. Rivera performed an evaluation of the records for
purposes of determining if Plaintiff's impairment satisfied
Section 112.02 of the Listing of Impairments. Dr. Rivera found
that she had only one marked limitation, that being in the area
of acquiring and using information, and that she consequently did
not meet or equal the Listing, which requires at least two marked
limitations. (Tr. 72-74). Another psychologist, Dr. Hill,
concurred. (Tr. 82-84).

IV. <u>The Vocational Testimony</u>

Nancy Shapiro was called to testify as a vocational expert

-4-

at the administrative hearing.  Her testimony begins at page 64
of the administrative record.

Ms. Shapiro was first asked some questions about someone
with Plaintiff's background and who could work at any exertional
level but was limited to the performance of simple, routine,
repetitive tasks that did not require a fast pace or had strict
production requirements, and which were performed in an
environment where changes would be only occasional and thoroughly
explained before being implemented.  Ms. Shapiro said that
someone with those restrictions could be employed as a bagger,
stock checker, or hand bander.

Next, Ms. Shapiro was asked whether someone who could not
complete various work-related tasks by herself on a regular and
continual basis could do those jobs.  She said no.  She also
said, however, that simply needing someone to explain more than
once how to do a new task was not work-preclusive.

V.  <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 11-
29 of the administrative record.  The important findings in that
decision are as follows.

The Administrative Law Judge found, first, that Plaintiff
was in the "Adolescents (age 12 to attainment of age 18)" age
group when her application for benefits was filed.  Second, he
found that Plaintiff had not engaged in substantial gainful
activity since the application date.  Going to the next step of
the sequential evaluation process, the ALJ concluded that
Plaintiff had one severe impairment, that being mild intellectual
disability.  The ALJ also found that this impairment did not, at
any time before Plaintiff turned 18, meet or equal the
requirements of any section of the Listing of Impairments (20
C.F.R. Part 404, Subpart P, Appendix 1), and that she did not
have an impairment of Listing severity after turning 18.

-5-

Moving to the next step of the sequential evaluation process, the ALJ found that since turning eighteen, Plaintiff had the residual functional capacity to perform simple, routine, repetitive tasks that did not require a fast pace or had strict production requirements, and which were performed in an environment where changes would be only occasional and thoroughly explained before being implemented.

With these restrictions, the ALJ concluded that Plaintiff could perform the jobs identified by the vocational expert, including bagger, stock checker, and hand bander.  The ALJ further determined that these jobs existed in significant numbers in the regional and the national economy.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

## VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ did not properly evaluate the credibility of Ms. Casey, the third party witness; and (2) the ALJ erred in his evaluation of the credibility of Plaintiff and her mother.  These issues are evaluated under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir.

-6-

1984).  In determining whether the Commissioner's decision is
supported by substantial evidence, the Court must "'take into
account whatever in the record fairly detracts from its weight.'"
Beavers v. Secretary of Health, Education and Welfare, 577 F.2d
383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB,
340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human
Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court
would reach contrary conclusions of fact, the Commissioner's
decision must be affirmed so long as that determination is
supported by substantial evidence.  Kinsella v. Schweiker, 708
F.2d 1058, 1059 (6th Cir. 1983).

A.  Ms. Casey's Testimony

In her first statement of error, Plaintiff faults the ALJ's
treatment of Ms. Casey's testimony.  The ALJ found that, based on
the totality of the evidence, including Ms. Perry's evaluation
and the forms completed during Plaintiff's work efforts (Exhibit
12E, Tr. 228-78), Plaintiff did not meet or equal any section of
the Listing of Impairments, either child's or adult's, and that
she had the residual functional capacity to perform simple and
routine tasks in a low-stress work setting, presumably without
the type of assistance or supervision that would be customary in
a sheltered workshop setting.  To some extent, Ms. Casey's
testimony can be viewed as inconsistent with this conclusion.
Plaintiff argues that because the ALJ did not explicitly evaluate
this testimony as required by Social Security Ruling 06-03p, the
case should be remanded for purposes of having the ALJ explain
how he considered it.

SSR 06-03p explains to adjudicators how to consider
testimony from persons who are not "acceptable medical sources."
Rehabilitation counselors are specifically listed as one of the
types of "non-medical sources" to whom the ruling applies.  The
ruling states that the general criteria for evaluating all

-7-

opinion evidence are those set out in 20 C.F.R. §404.1527(d)(now §404.1527(c))(the "treating physician" rule) and that these criteria "can" be applied to non-medical sources.  The ruling goes on to recognize that not every factor will apply in every case and that "[e]ach case must be adjudicated on its own particular merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case."

Plaintiff appears to be arguing that unless an ALJ specifically recites both that he or she considered all non-medical opinion evidence under this ruling and explains how these factors were applied, the decision is legally deficient.  That is not the law.  There is no "articulation requirement" for this type of evidence; that is, an ALJ does not have to provide the same level of detail, including giving "good reasons," for discounting opinions from "other sources" as the ALJ does when discussing opinions of treating physicians.  This Court expressly discussed this issue in York v. Comm'r of Social Security, 2014 WL 1213240, *5 (S.D. Ohio March 24, 2014), adopted and affirmed 2014 WL 2009018 (S.D. Ohio May 16, 2014), saying this:

> Some courts have suggested ... that the failure to address opinions rendered by sources which are not "acceptable medical sources" is legal error and may require remand. See, e.g., Watson v. Comm'r of Social Security, 2007 WL 4557859, *7 (W.D. Mich. Dec. 20, 2007); see also Patterson v. Astrue, 2010 WL 2232309, *14 (N.D. Ohio June 2, 2010). Nevertheless, it seems clear that "SSR 06-03p, in contrast to regulations pertaining to the handling of treating source opinions, does not require that an adjudicator articulate 'good reasons' for the rejecting of an 'other source's' opinion...." Saucier v. Astrue, 2011 WL 1158256, *5 (D. Me. March 28, 2011), adopted and affirmed 2011 WL 1526952 (D. Me. Apr. 22, 2011). As this Court has consistently held, "an ALJ is not required to discuss every piece of evidence in the record." Miller v. Astrue, 2010 WL 1644028, *4 (S.D. Ohio March 23, 2010), adopted and affirmed 2010 WL 1644026 (S.D. Ohio Apr.

23, 2010). <u>See also Thacker v. Comm'r of Social Security</u>, 99 Fed. Appx. 661 (6th Cir. May 21, 2004) (finding no "articulation duty" in SSR 96-7p but only a duty to consider Social Security employees' observations of a claimant). Consequently, the question here is whether the record supports Plaintiff's claim that the ALJ completely ignored the records relating to her rehabilitation process.

Here, the ALJ was clearly aware of Ms. Casey's testimony, having presided over the hearing where she testified, having asked her questions about her testimony, and having summarized her testimony in the administrative decision (Tr. 17-18). That summary was generally accurate, although it did not emphasize any testimony that lent support to the proposition that Plaintiff would need an unusual amount of assistance and support even in a routine unskilled work setting. It is important to note that Ms. Casey did not express such an opinion unequivocally, nor did her opinion appear to come from first-hand observation of Plaintiff in a work setting. Ms. Casey, reading from the letter from Mr. Browne, simply said that it was "the thought" that Plaintiff would not simply be abandoned by her rehabilitation counselor in the work setting and that Mr. Browne's services would continue in order to insure that Plaintiff was doing well. Ms. Casey said that in an ideal setting, Plaintiff could work independently, but that if she experienced a change in job settings or needed to apply for a different job, Mr. Browne would be there to help her. Ms. Casey did not say that Plaintiff was not capable, without such assistance, from performing routine unskilled work in a low stress setting where, as the ALJ described, any changes in the routine would be only occasional and thoroughly explained before being implemented.

The ALJ's decision was based in large part on the views of the state agency reviewers and on the statements made by Ms. Perry, Plaintiff's teacher, to the effect that Plaintiff did not have serious deficiencies in attending to and completing tasks

and could be employed.  It was also based on the notes made from Plaintiff's various work efforts.  Plaintiff has not argued that the ALJ mischaracterized the record concerning these matters or that they do not constitute substantial support for his residual functional capacity finding.  The Court finds no reversible error concerning Ms. Casey's testimony and therefore recommends overruling the first statement of error.

B.  <u>Plaintiff's and Her Mother's Testimony</u>

Plaintiff's second claim of error relates to the ALJ's evaluation of the credibility of the testimony which she and her mother gave at the administrative hearing.  She argues that although the ALJ stated that he was required to evaluate this testimony as prescribed in, among other sources, Social Security Ruling 96-7p, he did not.  She contends that his "boilerplate" statement that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment for the reasons explained below," Tr. 18, is insufficient and reverses the analytical process because the ALJ made a residual functional capacity finding before determining if Plaintiff's or her mother's testimony was believable.  The Commissioner argues, in turn, that Plaintiff's reliance on decisions such as <u>Bjornson v. Astrue</u>, 671 F.3d 640 (7th Cir. 2012) is misplaced, noting that there are subsequent decisions both from that Court of Appeals and others which limit the application of <u>Bjornson</u> and permit an ALJ to use such language if the ALJ subsequently explains the reasons for his credibility determination.

On the law, the Commissioner has the better argument. Shortly after <u>Bjornson</u> was decided, this Court concluded that the issue in such cases is not the use of boilerplate language, but what happens afterwards.  If an ALJ subsequently provides an adequate rationale for the credibility determination, the use of

-10-

such language does not require a remand.  See Jones v. Comm'r of
Social Security, 2012 WL 5378850, *7 (S.D. Ohio Oct. 30, 2012),
adopted and affirmed 2013 WL 556208 (S.D. Ohio Feb. 12, 2013),
citing, inter alia, Williams v. Astrue, 2012 WL 4364147 (S.D.
Ohio Sept. 24, 2012).  As the Court of Appeals later noted in Cox
v. Comm'r of Social Security, 615 Fed.Appx. 254, 260 (6th Cir.
June 11, 2015), "[o]ur chief concern with the popularity of this
template ... is the risk that an ALJ will mistakenly believe it
sufficient to explain a credibility finding, as opposed to merely
introducing or summarizing one."

     The Court finds, contrary to Plaintiff's argument, that the
ALJ adequately explained his credibility finding.  As noted
above, he discussed how the evidence, including the reports from
Ms. Perry, the job notes, and the opinions of the state agency
reviewers all pointed to the ability to work.  He pointed out
that Plaintiff was, with the assistance provided for her by her
IEP, academically successful.  He found that she had only a mild
degree of intellectual disability.  All of these factors are
supported by the record, and all permit the conclusion that
Plaintiff was not quite as limited as she and her mother
contended.

     Under the regulations and case law, an ALJ must consider
evidence about the claimant's daily activities, the duration,
frequency, and intensity of the symptoms, precipitating and
aggravating factors, medication (including side effects),
treatment or therapy, and any other pertinent factors, in making
a credibility finding.  See, e.g., 20 C.F.R. §404.1529(c)(3).
The Court may overturn the ALJ's credibility determination only
if the reasons given do not have substantial support in the
record.  See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir.
1994).  The evaluation of a claimant's credibility is largely
committed to the discretion of the Commissioner, and the findings
made in that regard are entitled to "great weight and deference."

-11-

<u>Walters v. Commissioner of Social Security</u>, 127 F.3d 525, 531 (6th Cir. 1997). Giving that level of deference to the ALJ's decision in this case, the Court finds no merit in Plaintiff's second claim of error.

## VII. <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII. <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge